IN the MATTER OF Gerald HASKINS:

MILWAUKEE COUNTY COMBINED COMMUNITY SERVICES BOARD, Appellant,

v.

Gerald HASKINS, Respondent.

Court of Appeals

*No. 79–1881. Submitted on briefs July 8, 1980.—*
*Decided September 8, 1980.*
(Also reported in 304 N.W.2d 125.)

For the appellant, the cause was submitted on the brief of *Gerard S. Paradowski*, acting corporation counsel, and *Robert A. McKnight*, assistant corporation counsel.

For the respondent, the cause was submitted on the brief of *Thomas K. Zander*, chief attorney, state public defender's office, mental health division, and *Stuart Spielman*, assisant state public defender.

Before Decker, C.J., Cannon, J., and Hanley, Reserve Judge.

DECKER, C.J.   The treatment director of the Milwaukee County Mental Health Center signed a statement of emergency detention under the Mental Health Act,[1] to commence the involuntary commitment of Gerald Haskins who had been admitted to the Milwaukee county treatment facility upon a commitment as a criminal defendant not competent to proceed under ch. 971, Stats.   The treatment director sought to satisfy the "recent conduct evidencing dangerousness" requirement of the Mental Health Act by relying upon Haskins' treatment record.   Because we read the Mental Health Act in conjunction with sec. 971.14(5), Stats., we conclude that a treatment director is authorized to proceed in that manner.

In Wisconsin, persons are admitted to treatment facilities in the following general situations:

(1) voluntary application under sec. 51.10, Stats.;

(2) voluntary application of minors under sec. 51.13;

(3) transfers of minors under sec. 51.35(3);

(4) temporary placements to facilitate transitionary services under sec. 51.35(5);

(5) law enforcement emergency detention under sec. 51.15(1);

---

[1] Ch. 51, Stats. (1977).   Unless otherwise indicated, all ch. 51 references are to the 1977 statutes.

(6) court-ordered involuntary commitments under sec. 51.20;

(7) court-ordered protective placements under ch. 55;

(8) court-ordered commitments under sex crimes law, ch. 975; and

(9) court-ordered criminal commitments for defendants not competent to proceed, under sec. 971.14.

This appeal centers on the interrelationship of secs. 51.15, 51.20, and 971.14, Stats., under the following fact situation.[2]

In a criminal complaint dated August 16, 1979, Gerald Haskins was charged with arson in violation of sec. 943.02(1)(a), Stats. Pursuant to sec. 971.14(2), the circuit court determined that Haskins lacked the competency to proceed, and committed Haskins to the Department of Health and Social Services, to be placed in an appropriate institution. After a period of time at Winnebago Mental Health Institute, Haskins was returned to Milwaukee county and committed to the Milwaukee County Mental Health Center, North Division.

It was reported to the circuit court that Haskins was mentally retarded. On October 11, 1979, the circuit court found that Haskins was not competent to proceed and was not making further progress toward regaining his competency to proceed. Pursuant to sec. 971.14(5), Stats., the court discharged Haskins from his criminal mental health commitment, suspended criminal proceedings, and ordered that Haskins be held for ten days to enable civil commitment or placement proceedings to be commenced under the Mental Health Act (ch. 51, Stats.) or the Protective Placement System (ch. 55).

[2] The facts stated in this opinion cannot be entirely verified in this sketchy and poorly-documented record. Nonetheless, we have relied upon them because the respondent has not disputed or controverted them in this appeal.

On October 23, 1979, the treatment director of the Milwaukee County Mental Health Center commenced a civil proceeding pursuant to sec. 51.15(10), Stats., to involuntarily commit Haskins for treatment by filing a detention statement based upon Haskins' treatment record compiled while he was criminally committed.[3] The detention statement alleged that Haskins was moderately mentally retarded, dangerous, and that the criminal court file revealed that he had set more than one fire between February and July, 1979. The detention statement was filed after the treatment director had examined Haskins and his treatment record.

Sections 51.15 and 51.20, Stats., of the Mental Health Act, authorizing involuntary detention or commitment, similarly require allegations that the subject of the proceeding is mentally ill, drug dependent, or developmentally disabled, and that there is a substantial probability of harm to self or others, evidenced by specific recent acts, omissions, or patterns of such acts or omissions.[4]

---

[3] Under sec. 51.15(10), Stats., a treatment director can commence a civil commitment proceeding against an individual admitted to a treatment facility by signing a detention statement. In light of the twelve-day lapse between the action of the circuit court and the commencement of the civil commitment proceeding, Haskins has challenged the timeliness of the treatment director's detention statement. The circuit court failed to rule upon the timeliness challenge because it dismissed the proceeding. Due to our disposition of this appeal, that motion is now pending.

From the record we note that the detention statement was signed October 22, 1979, and filed October 23, 1979. October 21, 1979 was a Sunday. *See* sec. 990.001(4)(b), Stats.

[4] Sec. 51.15(1)(a), Stats., requires "cause to believe that the individual is mentally ill, drug dependent, or developmentally disabled," and that the individual evidences:

1. A substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm;

2. A substantial probability of physical harm to other persons as manifested by evidence of recent homicidal or other violent

These allegations can be made by a law enforcement director under sec. 51.15(1), a treatment director under sec. 51.15(10), or three adult persons, at least one of

behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do such physical harm on his or her part; or

3. A very substantial probability of physical impairment or injury to himself or herself due to impaired judgment, as manifested by evidence of a pattern of recent acts or omissions. The probability of physical impairment or injury may not be deemed very substantial under this subdivision if reasonable provision for the individual's protection is available in the community.

Subparagraph 2 above has been amended to read:

A substantial probability of physical harm to other persons as manifested by evidence of recent homicidal or other violent behavior on his or her part, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do ~~such~~ *serious* physical harm on his or her part; ch. 336, Laws of 1979.

Subparagraph 3 above has been amended to read:

A ~~very~~ substantial probability of physical impairment or injury to himself or herself due to impaired judgment, as manifested by evidence of a ~~pattern of recent acts or omissions~~ *recent act or omission.* The probability of physical impairment or injury ~~may not be deemed very~~ *is not* substantial under this subdivision if reasonable provision for the individual's protection is available in the community~~,~~ *or, in the case of a minor, if the individual is appropriate for services or placement under s. 48.13(4) or (11);* ch. 336, Laws of 1979.

Also, sec. 51.15(1)(a)4 has been created by ch. 336, Laws of 1979, to read:

Behavior manifested by a recent act or omission that, due to mental illness or drug dependency, he or she is unable to satisfy basic needs for nourishment, medical care, shelter or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness or drug dependency. No substantial probability of harm under this subdivision exists if reasonable provision for the individual's treatment and protection is available in the community, if the individual can receive protective placement under

whom has personal knowledge of the conduct of the subject individual, under sec. 51.20(1)(b). An exception to the requirement of recent conduct evidencing dangerous-

s. 55.06 or, in the case of a minor, if the individual is appropriate for services or placement under s. 48.13(4) or (11). The individual's status as a minor does not automatically establish a substantial probability of death, serious physical injury, serious physical debilitation or serious disease under this subdivision.

Sec. 51.20(1)(a)1, Stats., requires allegations that the individual is "mentally ill, drug dependent, or developmentally disabled," and (2):

2. Is dangerous because the individual:

a. Evidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm; or

b. Evidences a substantial probability of physical harm to other individuals as manifested by evidence of recent homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do such physical harm; or

c. Evidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a very substantial probability of physical impairment or injury to himself or herself. The probability of physical impairment or injury may not be deemed very substantial under this subparagraph if reasonable provision for the subject individual's protection is available in the community or if the individual is appropriate for placement under s. 55.06. The subject individual's status as a minor does not automatically establish a very substantial probability of physical impairment or injury under this subparagraph.

(am) If the individual has been the subject of inpatient treatment for mental illness, developmental disability or drug dependency as a result of a voluntary admission or a commitment or placement ordered by a court under this section or s. 55.06 or ch 971 or 975 immediately prior to commencement of the proceedings, the requirements of specific recent overt acts, attempts or threats to act or pattern of recent acts or omissions may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn.

Subsections a, b, and c have been amended by ch. 336, Laws of 1979, to read:

ness, sec. 51.20(1)(am), was created by ch. 428, Laws of 1977:

If the individual has been the subject of inpatient treatment for mental illness, developmental disability or drug

a. Evidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm; ~~or~~

b. Evidences a substantial probability of physical harm to other individuals as manifested by evidence of recent homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do ~~such~~ *serious* physical harm; ~~or~~

c. Evidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a ~~very~~ substantial probability of physical impairment or injury to himself or herself. The probability of physical impairment or injury ~~may not be deemed very~~ *is not* substantial under this subparagraph if reasonable provision for the subject individual's protection is available in the community ~~or,~~ if the individual is appropriate for placement under s. 55.06 *or, in the case of a minor, if the individual is appropriate for services or placement under s. 48.13(4) or (11).* The subject individual's status as a minor does not automatically establish a ~~very~~ substantial probability of physical impairment or injury under this subparagraph~~.~~ *,or*

Subsection d has been created by ch. 336, Laws of 1979, to read:

d. Evidences behavior manifested by recent acts or omissions that, due to mental illness, he or she is unable to satisfy basic needs for nourishment, medical care, shelter or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness. No substantial probability of harm under this subparagraph exists if reasonable provision for the individual's treatment and protection is available in the community, if the individual can receive protective placement under s. 55.06 or, in the case of a minor, if the individual is appropriate for services or placement under s. 48.13(4) or (11). The individual's status as a minor does not automatically establish a substantial probability of death, serious physical injury, serious physical debilitation or serious disease under this subparagraph.

dependency as a result of a voluntary admission or a commitment or placement ordered by a court under this section or s. 55.06 or ch. 971 or 975 immediately prior to commencement of the proceedings, the requirements of specific recent overt acts, attempts or threats to act or pattern of recent acts or omissions may be satisfied by showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn.[5]

At the probable cause hearing required by sec. 51.20 (7), Stats., the proceedings against Haskins were dismissed without prejudice by the Register in Probate, and the circuit court affirmed. The Register in Probate held that secs. 51.15(1) and 51.15(10), Stats., do not provide authority for allegations by a treatment director that the individual is a proper subject for commitment, based upon sec. 51.20(1)(am). The Register in Probate concluded that because of its placement in sec. 51.20, sec. 51.20(1)(am) could be used by the treatment director

---

[5] This subparagraph has been amended to read:

If the individual has been the subject of inpatient treatment for mental illness, developmental disability or drug dependency as a result of a voluntary admission or a commitment or placement ordered by a court under this section or s. 55.06 or ch. 971 or 975 immediately prior to commencement of the proceedings, the requirements of ~~specific~~ a recent overt ~~acts, attempts or threats to act or~~ act, attempts or threat to act under par. (1)2. a or b, a pattern of recent acts or omissions under par. (1)2. c. or recent behavior under par. (1)2. d may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn. *If the individual has been admitted voluntarily to an inpatient treatment facility for not more than 30 days prior to the commencement of the proceedings and remains under voluntary admission at the time of commencement, the requirements of a specific recent overt act, attempt or threat to act or pattern of recent acts or omissions may be satisfied by a showing of an act, attempt or threat to act or a pattern of acts or omissions which took place immediately previous to the voluntary admission.* Ch. 336, Laws of 1979.

only if a three-person petition was filed pursuant to sec. 51.20(1)(b). Milwaukee County Combined Community Services Board appeals.[6]

On appeal, Milwaukee County Combined Community Services Board argues that the provisions of sec. 51.20 (1)(am), Stats., when read in conjunction with secs. 51.15(1), 51.15(10), and 971.14(5), evince a clear legislative intent to authorize the treatment director to initiate a commitment proceeding pursuant to sec. 51.15(10) against a person held under sec. 971.14(5), using sec. 51.20(1)(am) to satisfy the recent conduct requirements of sec. 51.15(1). We agree where, as here, the treatment director has examined the defendant and his treatment record.

## SCOPE OF SEC. 51.15(10), STATS.

In support of the circuit court dismissal, Haskins argues that sec. 51.15(10), Stats., does not apply to persons involuntarily committed in the first instance, but only allows a treatment director to detain voluntarily committed mentally ill, drug dependent, or developmentally disabled persons who are dangerous and in need of treatment, and seek to terminate their voluntary care.

Section 51.15(10), Stats., provides as follows:

(10) Voluntary patients.[7] If an individual has been admitted to an approved treatment facility under s. 51.10

---

[6] The Chief Judge, on his own motion, granted consideration by a three-judge panel.

[7] No weight is to be given to the caption of sec. 51.15(10): "Voluntary patients." *Hoeft v. Milwaukee & Suburban Transport Co.*, 42 Wis.2d 699, 707–08, 168 N.W.2d 134, 138 (1969). Reference to voluntary patients appears to have been carried over from the prior limitation on the treatment director's authority to commence emergency detention for persons voluntarily admitted to the facility. *See* note 9, *infra.* The caption must yield to the unambiguous language of the statute.

or 51.13, *or has been otherwise admitted* to such facility, the treatment director or his or her designee, if conditions exist for taking the individual into custody under sub. (1) may sign a statement of emergency detention and may detain, or detain and treat, such individual as provided in this section. In such case, the treatment director shall undertake all responsibilities which are required of a law enforcement officer under this section. The treatment director shall promptly file the statement with the court having probate jurisdiction in the county of detention as provided in this section. [Emphasis added.]

Because sec. 51.10, Stats., provides for voluntary admission of adults, and sec. 51.13 for voluntary admission of minors,[8] Haskins argues that the phrase "or has been otherwise admitted" refers only to classes of persons voluntarily admitted to a treatment center, and not to persons involuntarily committed.

Persons are not only admitted to treatment facilities upon application or court order under secs. 51.10 and 51.13, Stats., but can be "otherwise admitted" in the host of diverse situations outlined earlier in this opinion. In all of these situations, the treatment director admits the individual into the facility. For example, if a defendant is criminally committed to the Department of Health and Social Services, the department will place the defendant in an appropriate institution. Sec. 971.14(5), Stats. Upon placement by the department, the defendant is delivered to the institution and is admitted into the facility by the treatment director or a designee, often an admission officer.

Accordingly, the use of the phrase "otherwise admitted" is not ambiguous. In the absence of ambiguity, resort to judicial rules of interpretation and construction is not permitted. The words must be given their obvious and

---

[8] A possible exception is sec. 51.13(1)(c), Stats., authorizing court-ordered commitments.

ordinary meaning. *Wisconsin Bankers Ass'n v. Mutual Savings & Loan Ass'n,* 96 Wis.2d 438, 450, 291 N.W.2d 869, 875 (1980). The phrase "otherwise admitted" in sec. 51.15(10), Stats., encompasses all types of admissions to a treatment facility, voluntary or involuntary, and is not restricted in its application to the admission of voluntary patients.[9]

Furthermore, detention by a treatment director pursuant to sec. 51.15(10), Stats., is consistent with the procedures where a defendant is incompetent to proceed under sec. 971.14(5), which provides, in relevant part:

[A]t any time that it is determined that the defendant is not making further progress toward regaining competency, . . . the court shall order the defendant to be discharged from the commitment subject to the right of the department or other person to proceed against the defendant under ch. 51.

Section 51.15(10), Stats., authorizes a treatment director of the facility to which an individual has been criminally committed under sec. 971.14 to commence involuntary commitment proceedings by signing a statement of emergency detention. The director, by virtue of having the individual under his observation, is in a position to have the knowledge required by ch. 51.[10] This

---

[9] Coincidentally, sec. 51.10(5)(c), Stats., has been amended by ch. 336, Laws of 1979, to specifically address the emergency detention of a person voluntarily committed, the fact situation to which Haskins would have us limit sec. 51.15(10).

[10] Our supreme court has held, in comparing sec. 971.14(5), Stats., with the predecessor to the present civil commitment procedure:

Consistent, however, with the provisions of sec. 971.14(5), the department, by virtue of having the defendant under observation, is peculiarly in a position to have the knowledge necessary to initiate the ch. 51 procedure if it so desires, and the mental hearing and commitment may proceed on the application of the department alone. *State ex rel. Haskins v. Dodge County Court,* 62 Wis.2d 250, 263–64, 214 N.W.2d 575, 582 (1974).

reading of secs. 51.15 (10) and 971.14 (5) gives harmonious operation to both, without doing violence to either. *See State v. Wachsmuth*, 73 Wis.2d 318, 243 N.W.2d 410 (1976).

Section 51.15 (10), Stats., is also consistent with the emergency detention procedures prescribed by secs. 51.15 (4) and (5). In Milwaukee county, when emergency detention is initiated by a law enforcement officer, the individual is involuntarily admitted to the treatment facility. The treatment director must determine within specified times whether the individual should be discharged or detained for commitment proceedings. The director must assess whether the individual is eligible for commitment, and may include in a statement specific information concerning his or her belief that the person detained meets the standard of commitment. "The filing of the statement . . . has the same effect as a petition for commitment under s. 51.20." Sec. 51.15 (4).

In other counties a law enforcement officer's filed detention statement "has the same effect as a petition for commitment under s. 51.20." Sec. 51.15 (5), Stats.

Section 51.15 (10), Stats., enables the same kind of practice to be followed by the treatment director and specifically provides that upon signing a detention statement the director "may detain . . . such individual as provided in this section." The reference to the section applies to all of sec. 51.15. *See* sec. 35.18 (3).

## THREE-PERSON PETITION

In dismissing the present proceedings, the circuit court adopted Haskins' second argument, that sec. 51.20 (1) (am), Stats., serves only to satisfy the recent dangerous conduct requirement of sec. 51.20 (1) (a), and can be used only in conjunction with the three-person petition required by sec. 51.20 (1) (b). A treatment director signing an emergency detention statement pursuant to sec. 51.15

(10) must, by contrast, fulfill the criteria of sec. 51.15 (1) requiring him to have knowledge of recent dangerous conduct without the sec. 51.20(1) (am) "shortcut." We think an argument that would ascribe such a result to the legislative statutory plan for the protection of the rights of mentally ill or developmentally disturbed persons[11] is unwarranted, and under the circumstances present in this case, view a three-person petition pursuant to sec. 51.20(1) (b) as not mandatory, but as a permissive alternative when utilizing sec. 51.20(1) (am).

In support of his argument that a treatment director acting alone cannot rely on sec. 51.20(1) (am), Stats., Haskins asserts that secs. 51.15(10) and 51.15(1) are not ambiguous, and therefore, require no construction. Haskins' argument refuses to consider the circumstances of this case, in which sec. 971.14(5) is also involved.

Section 971.14(5), Stats., allows a criminal defendant not competent to proceed to be committed for up to twenty-four months for examination. Under such circumstances, the likelihood of that person committing an overt act manifesting dangerousness sufficient to satisfy the recent conduct requirements of ch. 51 is substantially reduced. Nonetheless, this subsection authorizes the "department or other persons" to proceed against the defendant under ch. 51. Significantly, sec. 971.14(5) applies only after a course of unsuccessful treatment. A treatment director is peculiarly in a position, by virtue of having observed the individual and having a record from the treatment facility, to commence a ch. 51 commitment proceeding,[12] as expressly authorized by sec. 971.14(5).

Given this authorization, reading secs. 51.15(1) and 971.14(5), Stats., together with secs. 51.15(1) and 51.20 (1) (am) creates an ambiguity. Ambiguity can be created by the interaction of separate statutes. In the event

---

[11] *See* sec. 51.001, Stats.

[12] *See* note 10, *supra.*

of ambiguity, a court may review matters outside the statutory language in order to determine the meaning intended by the legislature. *State v. Kenyon,* 85 Wis.2d 36, 49, 270 N.W.2d 160, 166 (1978).

Section 51.20(1) (am), Stats., was added to the Mental Health Act by ch. 428, Laws of 1977. The analysis of the amendment attached by the Legislative Reference Bureau to the engrossed text of the Assembly Bill explains:

1. The standard of involuntary emergency detention and commitment of alleged mentally ill, developmentally disabled and drug dependent persons is changed . . . . [T]he bill provides that if the subject has been institutionalized immediately prior to commitment, the requirement of a recent overt act or threat may be satisfied by a showing that there is a substantial likelihood, based on the subject's treatment record, that the individual would be a proper subject for treatment if treatment were withdrawn.

Section 51.20(1) (am), Stats., was added to the Act at the same time that the treatment director's authority to sign emergency detention statements was expanded to encompass the present scope of sec. 51.15(10).[13]

Despite its placement in sec. 51.20(1), Stats., neither sec. 51.20(1) (am) nor the Legislative Reference Bureau explanation mentions the three-person petition proceeding, thereby not expressly restricting its usage as Haskins would have us do. We believe it apparent from the interaction of the statutes that involuntary emergency detention pursuant to sec. 51.15, and involuntary commitment pursuant to sec. 51.20, are based upon the

---

[13] Before ch. 51, Stats. (1977), was rewritten to enact the Mental Health Act applicable to this case, the treatment director was authorized to commence involuntary commitment proceedings by emergency detention only if a person had been voluntarily admitted. Sec. 51.15(7), Stats. (1975); ch. 430, Laws of 1975.

same standard,[14] and that the recent dangerous conduct requirement of each may be satisfied by the treatment record, whether proceeding by emergency detention statement or three-person petition.

Our view is consistent with the recent amendments to ch. 51. Chapter 336, Laws of 1979, amended sec. 51.10 (5) (c), Stats., to provide that a person voluntarily admitted must be discharged unless the treatment director believes the person is dangerous in accordance with sec. 51.20 (1) (a) 2 or 51.20 (1) (am) and signs a statement of emergency detention under sec. 51.15. Section 51.15 (10) was not changed. Thus, to commence the involuntary commitment upon emergency detention of a person voluntarily admitted, the treatment director may sign the emergency detention statement under sec. 51.15 (10), but may satisfy the requirement of sec. 51.15 (1) of a recent overt act or threat by the treatment record.

We conclude that a treatment director may also commence a ch. 51 involuntary commitment of a person admitted to the facility upon a ch. 971 commitment by signing an emergency detention statement pursuant to sec. 51.15 (10), Stats., with the sec. 51.15 (1) requirement of "recent conduct" satisfied by the treatment record under sec. 51.20 (1) (am), where the person had been committed under ch. 971 immediately prior to commencement of the ch. 51 commitment process, and where the treatment director has examined the defendant and his treatment record.

The filing of the emergency detention statement has the effect of a petition for commitment under sec. 51.20, Stats.[15] Accordingly, the extensive set of rights and

[14] *See* note 4, *supra,* indicating that ch. 336, Laws of 1979, replaced the 1977 criteria of a pattern of recent acts or omissions with the requirement of a recent act or omission.

[15] *See* secs. 51.15 (4) (b) and 51.15 (5), Stats.

procedural safeguards of sec. 51.20 apply to individuals detained upon a statement of emergency detention.

Haskins would have us hold that where the individual has been committed under ch. 971 immediately prior to commencement of the involuntary commitment process, three persons under sec. 51.20(1), Stats., could file a petition relying on the treatment record, but the treatment director of the facility which compiled the treatment record and examined the defendant would have to allege a recent overt act or threat, even though the individual had been committed for a substantial period, and even though the treatment director could detain a voluntary admittee by utilizing the treatment record to satisfy the requirement of a recent overt act or threat. Such a construction is not reasonable and must be rejected. *Falkner v. Northern States Power Co.*, 75 Wis.2d 116, 124, 248 N.W.2d 885, 890 (1977).

*By the Court.*—Order reversed; cause remanded.[16]

---

[16] *See* note 3, *supra.*