IN the MATTER OF the MENTAL COMMITMENT OF
STEVENSON L. J.:

DANE COUNTY,
Petitioner-Appellant,

v.

STEVENSON L. J.,
Respondent-Respondent.

Court of Appeals

*No. 2008AP1281. Submitted on briefs October 30, 2008.
— Decided May 21, 2009.*

**2009 WI App 84**

(Also reported in 768 N.W.2d 223.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Galen G. Strebe*, assistant corporation counsel of Dane County Corporation Counsel, Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Ruth Westmont*, Madison.

Before Higginbotham, P.J., Vergeront and Bridge, JJ.

¶ 1. BRIDGE, J. Dane County appeals orders of the Dane County Circuit Court dismissing the County's action for an emergency detention of Stevenson L.J. pursuant to a statement of emergency detention filed by the treatment director of Mendota Mental Health Institute under Wis. Stat. § 51.15(10) (2007–08).[1] Stevenson L.J. was detained at Mendota pursuant to a statement of emergency detention that had previously been filed by a law enforcement officer. However, because a probable cause hearing was not held within seventy-two hours of Stevenson L.J.'s initial emergency detention as is required by Wis. Stat. § 51.20(7)(a), the circuit court ruled that Stevenson L.J.'s continued detention at Mendota after the expiration of the seventy-two hour period was without legal authority. The court rejected the County's argument that Stevenson L.J. was nevertheless lawfully detained by the treatment director's statement because he was "otherwise admitted" to Mendota within the meaning of § 51.15(10), which provides that a person "otherwise admitted" to a

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

197

treatment facility may be emergently detained if certain conditions are met. We agree with the circuit court and affirm.

## BACKGROUND

### Statutory Framework

¶ 2. Wisconsin Stat. § 51.15 authorizes the emergency involuntary detention of an individual upon allegations that the subject of the proceeding is mentally ill, drug dependent or developmentally disabled, and that there exists a substantial probability of harm to self or others.[2] These allegations may be made by law enforcement officers, among other authorized individu-

---

[2] Wisconsin Stat. § 51.15(1) provides in relevant part as follows:

> **51.15. Emergency detention.** (1) Basis for detention. (a) A law enforcement officer or other person authorized to take a child into custody under ch. 48 or to take a juvenile into custody under ch. 938 may take an individual into custody if the officer or person has cause to believe that the individual is mentally ill, is drug dependent, or is developmentally disabled, and that the individual evidences any of the following:
>
> 1. A substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm.
>
> 2. A substantial probability of physical harm to other persons as manifested by evidence of recent homicidal or other violent behavior on his or her part, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm on his or her part.
>
> 3. A substantial probability of physical impairment or injury to himself or herself due to impaired judgment, as manifested by evidence of a recent act or omission . . . .
>
> 4. Behavior manifested by a recent act or omission that, due to mental illness or drug dependency, he or she is unable to satisfy

als. *See* § 51.15(1). Officers may transport the individual to an appropriate mental health facility, *see* § 51.15(2), and, pursuant to § 51.15(5), must complete a written statement of emergency detention, which is filed with the detention facility and with the court immediately thereafter. Section 51.15(5) provides that, in counties having a population of less than 500,000, as in the present case, the individual undertaking the detention:

> shall sign a statement of emergency detention that shall provide detailed specific information concerning the recent overt act, attempt, or threat to act or omission on which the belief under sub. (1) is based and the names of persons observing or reporting the recent overt act, attempt, or threat to act or omission .... The statement of emergency detention shall be filed by the [detaining party] with the detention facility at the time of admission, and with the court immediately thereafter. The filing of the statement has the same effect as a petition for commitment under s. 51.20 .... *Unless a hearing is held under s. 51.20(7) or 55.135, the subject individual may not be detained ... for more than a total of 72 hours, exclusive of Saturdays, Sundays, and legal holidays.* (Emphasis added.)

¶ 3. WISCONSIN STAT. § 51.20(7)(a) in turn provides that an individual detained under WIS. STAT. § 51.15 must be provided a probable cause hearing within seventy-two hours of arrival at the detention facility in order to permit a court to determine whether there is

---

basic needs for nourishment, medical care, shelter, or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation, or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness or drug dependency ....

probable cause to believe the allegations contained in the statement of emergency detention. It states as follows:

(7) PROBABLE-CAUSE HEARING. (a) After the filing of the petition under sub. (1), if the subject individual is detained under s. 51.15 or this section the court shall hold a hearing to determine whether there is probable cause to believe the allegations made under sub. (1)(a) within 72 hours after the individual arrives at the facility, excluding Saturdays, Sundays and legal holidays. At the request of the subject individual or his or her counsel the hearing may be postponed, but in no case may the postponement exceed 7 days from the date of detention.

If the court determines that probable cause exists, it is to schedule a hearing on the matter within fourteen days from the time of the individual's detention. *See* § 51.20(7)(c).

## FACTUAL BACKGROUND

¶ 4. The material facts of Stevenson L.J.'s detention within the statutory framework described above are not in dispute. On October 6, 2007, he was emergently detained in Brown County by a statement of emergency detention by a law enforcement officer. The statement was filed in Brown County Circuit Court. That same day, he was transferred to Mendota, which is located in Dane County. The parties agree that Stevenson L.J. did not request a postponement of the probable cause hearing, and that a hearing was not held in Brown County within the prescribed time, which expired on October 10. Stevenson L.J. nevertheless remained under detention in Mendota, apparently

200

due to the mistaken belief by Mendota staff that Stevenson L.J.'s probable cause hearing had been postponed to October 11.

¶ 5. On October 11, Mendota staff realized that the probable cause hearing had not been timely held, and the treatment director[3] at Mendota filed another statement of emergency detention, this time in Dane County, under WIS. STAT. § 51.15. The director's statement alleged that Stevenson L.J. "remains acutely psychotic and dangerous," and that he "cannot be released" for these reasons. A probable cause hearing was subsequently held on October 12 before a Dane County court commissioner, who found probable cause to believe the allegations in the treatment director's statement. A final hearing on the matter was scheduled for October 18.

¶ 6. Prior to the final hearing, Stevenson L.J. filed a motion to dismiss the action on the basis that the Dane County Circuit Court was without competency to proceed[4] with respect to the treatment director's statement because a probable cause hearing had not been held within seventy-two hours of his initial emergency

---

[3] A "treatment director" is defined as "the person who has primary responsibility for the treatment provided by a treatment facility." WIS. STAT. § 51.01(18). A "treatment facility" is defined as "any publicly or privately operated facility or unit thereof providing treatment of alcoholic, drug dependent, mentally ill or developmentally disabled persons, including but not limited to inpatient and outpatient treatment programs, community support programs and rehabilitation programs." Section 51.01(19).

[4] A court loses competency to proceed when it has jurisdiction over the persons and subject matter of the proceeding, but for other reasons does not have the power to render a valid judgment. *See Mueller v. Brunn*, 105 Wis. 2d 171, 176–78, 313

detention on October 6. The County opposed the motion, arguing that Wɪs. Sᴛᴀᴛ. § 51.15(10), which we discuss in greater detail below, provided authority for Stevenson L.J.'s continued detention in Mendota after the expiration of the seventy-two hour time limit pursuant to the filing of the treatment director's statement, and that the court had competency to proceed with a probable cause hearing based on this statement. The circuit court disagreed and granted Stevenson L.J.'s motion to dismiss. The County appeals. We reference additional facts as needed in the discussion below.

## DISCUSSION

¶ 7. The County does not dispute that the Brown County Circuit Court lost competency to proceed with the probable cause hearing when it failed to conduct the hearing on the initial October 6 statement of emergency detention within seventy-two hours as required by Wɪs. Sᴛᴀᴛ. § 51.20(7)(a). The dispute centers instead on whether, in spite of noncompliance with the statutory time limit with respect to his initial detention, Stevenson L.J. was lawfully detained by virtue of the statement of emergency detention subsequently filed by the treatment director, and whether the Dane County Circuit Court therefore had competency to proceed with a probable cause hearing on the allegations contained in that statement. This requires us to interpret Wɪs. Sᴛᴀᴛ. § 51.15(10) and apply its language to undisputed facts.

¶ 8. Questions of statutory interpretation and application are questions of law subject to our de novo

N.W.2d 790 (1982), *abrogated on other grounds by Village of Trempealeau v. Mikrut*, 2004 WI 79, 273 Wis. 2d 76, 681 N.W.2d 190.

review. *Haferman v. St. Clare Healthcare Found., Inc.*, 2005 WI 171, ¶ 15, 286 Wis. 2d 621, 707 N.W.2d 853. The goal of statutory interpretation is to give effect to the intent of the legislature, which we assume to be expressed in the statutory language. *State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. To ascertain a statute's meaning, we start with its plain meaning. *Id.*, ¶ 45. We are to give a statute its common sense meaning and avoid unreasonable and absurd results. *Heritage Credit Union v. Office of Credit Unions*, 2001 WI App 213, ¶ 18, 247 Wis. 2d 589, 634 N.W.2d 593.

¶ 9. WISCONSIN STAT. § 51.15(10) provides as follows:

> VOLUNTARY PATIENTS. If an individual has been admitted to an approved treatment facility under s. 51.10 or 51.13, *or has been otherwise admitted* to such facility, the treatment director or his or her designee, if conditions exist for taking the individual into custody under sub. (1), may sign a statement of emergency detention and may detain, or detain, evaluate, diagnose and treat the individual as provided in this section. In such case, the treatment director shall undertake all responsibilities that are required of a law enforcement officer under this section. The treatment director shall promptly file the statement with the court having probate jurisdiction in the county of detention as provided in this section. (Emphasis added.)

The County argues that Stevenson L.J. was "otherwise admitted" to Mendota within the meaning of § 51.15(10), and that the treatment director's statement of emergency detention not only authorized his detention after the initial seventy-two hours had passed, but also commenced a fresh seventy-hour period within which to hold a probable cause hearing.

203

¶ 10. Although the statute refers to "voluntary patients" in its title, the County correctly notes that in *In re Haskins,* 101 Wis. 2d 176, 187, 304 N.W.2d 125 (Ct. App. 1980), we determined that the phrase "otherwise admitted" in Wis. Stat. § 51.15(10) is not restricted in its application to the admission of voluntary patients and encompasses all types of admissions, both voluntary and involuntary. In so holding, we observed that persons in treatment facilities may arrive voluntarily or may be "otherwise admitted" in a host of diverse situations, including involuntary admissions based on, among other things, emergency detention statements filed by law enforcement officers such as occurred in the present case. *See Haskins,* 101 Wis. 2d at 180–82, 186. Contrary to the County's argument, however, simply because the term "otherwise admitted" applies to involuntary patients, it does not necessarily follow that the term further includes involuntary patients who have been detained beyond seventy-two hours without a probable cause hearing.

¶ 11. The authority to confine an individual involuntarily to a mental health facility implicates a liberty interest protected by due process. *See, e.g., Humphrey v. Cady,* 405 U.S. 504, 509 (1972) (commitment to a mental hospital produces "a massive curtailment of liberty"); *State ex rel. B.S.L. v. Lee,* 115 Wis. 2d 615, 621, 340 N.W.2d 568 (Ct. App. 1983). In recognition of the significant liberty interest an individual has in living where and under what conditions he or she chooses, the legislature has imposed tight time limits in connection with involuntary detention proceedings. *Kindcare, Inc. v. Judith G.,* 2002 WI App 36, ¶ 12, 250 Wis. 2d 817, 640 N.W.2d 839. The time frame for holding a probable

cause hearing is calculated in hours, not days, from the moment the individual arrives at the facility, thus illustrating the legislature's intent to prevent people from being detained any longer than necessary. *See, e.g., id.,* ¶¶ 18–19. "Although protecting people from harm is important, so is due process, which the time limit is intended to provide." *Dodge County v. Ryan E.M.,* 2002 WI App 71, ¶ 11, 252 Wis. 2d 490, 642 N.W.2d 592.

¶ 12. Under the County's argument, "otherwise admitted" would mean that a person initially detained under Wis. Stat. § 51.15(5) could be held solely on the basis of a treatment director's emergency detention statement, which would, in essence, reset the seventy-two hour clock while the patient remained involuntarily detained at the institution. If this could be done once, however, there is no reason why it could not be done two or three times, or more for that matter. Given the statute's unambiguous intent to protect the liberty interests of individuals like Stevenson L.J. during emergency detention, § 51.15(10) cannot reasonably be construed to allow practices that would defeat that end. As we held in the context of an individual who was detained following a probable cause hearing but past the time limit for holding a final hearing:

> It may be, as the court ultimately found, that [the patient] was and remains a fit subject for protective placement. But the next respondent in a commitment or placement proceeding who is similarly deprived of his or her liberty for twice—or three or four times—the [time] limit may not be. Either the law is applied to every one or to no one.

*State ex rel. Sandra D. v. Getto,* 175 Wis. 2d 490, 499, 498 N.W.2d 892 (Ct. App. 1993). Stevenson L.J.'s first detention expired when he was not given a probable

cause hearing within seventy-two hours. We conclude that § 51.15(10) is not ambiguous and cannot reasonably be construed to authorize the continued detention of an individual who has not been given a probable cause hearing within the statutorily required time. Accordingly, the treatment director's statement of emergency detention was a nullity.

██

¶ 13. Because we conclude that WIS. STAT. § 51.15(10) cannot reasonably be interpreted to authorize the continued detention of an individual who has not received the mandated probable cause hearing within seventy-two hours, we also reject the County's additional contention that the second statement of emergency detention did not run afoul of our holdings in *Getto,* 175 Wis. 2d at 501–02, and *Judith G.,* 250 Wis. 2d 817, ¶ 19. In each of these cases, we held that once the seventy-two hour period for holding a probable cause hearing has expired, the filing of a substantially identical successive petition for detention in an effort to set back the clock did not restore the court's competency to proceed. *See Getto,* 175 Wis. 2d at 500–01, and *Judith G.,* 250 Wis. 2d 817, ¶ 19. Here, contrary to the County's argument, the fact that the treatment director's subsequent statement of emergency detention contained additional allegations of dangerousness and was filed in a different county by a different detaining authority does not cure its defect. The statement's shortcoming does not lie in its venue or in its content; instead, it lies in the fact that the detention it sought to execute was contrary to statutory requirements and was thus unlawful.

██

¶ 14. The County also makes passing reference to WIS. STAT. § 51.10(5)(c), which provides as follows:

> Any patient or resident voluntarily admitted to an inpatient treatment facility shall be discharged on request, unless the treatment director or the treatment director's designee has reason to believe that the patient or resident is dangerous in accordance with a standard under s. 51.20(1)(a)2. or (am) and files a statement of emergency detention under s. 51.15 with the court by the end of the next day in which the court transacts business. The patient or resident shall be notified immediately when such a statement is to be filed. Prior to the filing of a statement, the patient or resident may be detained only long enough for the staff of the facility to evaluate the individual's condition and to file the statement of emergency detention. This time period may not exceed the end of the next day in which the court transacts business. Once a statement is filed, a patient or resident may be detained as provided in s. 51.15(1). The probable cause hearing required under s. 51.20(7) shall be held within 72 hours after the request for discharge, excluding Saturdays, Sundays and legal holidays.

The County acknowledges that the language of the statute explicitly applies only to patients who are voluntarily admitted. It contends, however, that we should construe the term "voluntarily admitted" to permit a treatment director to detain patients who are involuntarily admitted. In conclusory fashion, the County argues that this is appropriate because both classes of patients are involuntarily held pending the filing of the statement of emergency detention by the treatment director.[5] We decline the County's invitation to rewrite

---

[5] The County apparently did not make this argument before the circuit court, and we therefore need not address it. *See Bilda v. County of Milwaukee*, 2006 WI App 57, ¶ 20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661. In the interest of completeness, however, we choose to do so.

§ 51.10(5)(c). The statute plainly and unambiguously sets out the procedure for detaining voluntarily admitted patients who seek release and who the treatment director deems dangerous. Because the meaning of § 51.10(5)(c) is plain, our inquiry ends. *See Kalal*, 271 Wis. 2d 633, ¶ 45.

¶ 15. For the above reasons, we conclude that the continued detention of Stevenson L.J. at Mendota beyond the expiration of the time limit established by Wis. Stat. § 51.20(7)(a) was unlawful, and the statement of emergency detention filed by the treatment director of the Mendota Mental Health Institute pursuant to Wis. Stat. § 51.15(10) following the expiration of that time period did not operate to cure the unlawful detention.

*By the Court.*—Orders affirmed.