COURT OF APPEALS
DECISION
DATED AND FILED

January 7, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP250**

STATE OF WISCONSIN

Cir. Ct. No. 2023ME194

IN COURT OF APPEALS
DISTRICT III

---

IN THE MATTER OF THE MENTAL COMMITMENT OF M. J. B.:

OUTAGAMIE COUNTY,

    PETITIONER-RESPONDENT,

  V.

M. J. B.,

    RESPONDENT-APPELLANT.

---

      APPEAL from orders of the circuit court for Outagamie County: YADIRA REIN, Judge. *Reversed.*

      Before Stark, P.J., Hruz and Gill, JJ.

¶1    STARK, P.J.[1] Mark[2] appeals orders entered for his involuntary commitment pursuant to WIS. STAT. § 51.20 and for his involuntary medication and treatment pursuant to WIS. STAT. § 51.61(1)(g). Mark argues that the circuit court lacked competency to proceed with the final hearing for his involuntary commitment due to Outagamie County's failure to provide him with an examiner's report[3] forty-eight hours in advance of his final hearing, as required by § 51.20(10)(b).

¶2    We conclude that WIS. STAT. § 51.20(10)(b)'s mandated time limit for the filing of the two examiners' reports is central to the statutory scheme of WIS. STAT. ch. 51, such that a failure to comply with that statute's mandate prior to the time of the final hearing on a mental health commitment substantially

_____

[1] Pursuant to WIS. STAT. § 752.31 (2021-22), cases under WIS. STAT. ch. 51 (2021-22) are decided by one judge. However, upon reviewing the briefs in this matter, this court determined that the issue raised by the appellant warrants consideration by three judges and subsequently sua sponte ordered that this case be decided by three judges. *See* WIS. STAT. RULE 809.41(3) (2021-22).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

[3] WISCONSIN STAT. § 51.20(9)(a)1. provides:

> If the court finds after the hearing that there is probable cause to believe the allegations under sub. (1), it shall appoint [two] licensed physicians specializing in psychiatry, or one licensed physician and one licensed psychologist, or [two] licensed physicians one of whom shall have specialized training in psychiatry, if available, or [two] physicians, to personally examine the subject individual.

We interchangeably use the terms "examiner" and "expert" throughout this opinion to refer to the expert examiners required by WIS. STAT. § 51.20(9)(a)1.

affects the rights of an individual subject to commitment and it deprives the circuit court of competency. We therefore determine that the circuit court lost competency to proceed with the final hearing on Mark's ch. 51 commitment due to the County's failure to timely provide him with one of the two required examiner's reports, and we reverse the court's commitment and medication and treatment orders.

## BACKGROUND

¶3 Mark was emergently detained, pursuant to WIS. STAT. § 51.15, on August 23, 2023, following an incident during which Mark destroyed property at his mother's home and caused her to be fearful for her safety. A hearing was held on August 28, 2023, to determine whether there was probable cause to have Mark involuntarily committed under WIS. STAT. § 51.20. The circuit court found there was probable cause to believe that Mark was mentally ill, a proper subject for treatment, and dangerous to himself or others. It ordered that Mark be evaluated by two experts and scheduled a final hearing for September 6, 2023.

¶4 Mark was examined by a psychologist, Dr. Denise Valenti-Hein, and a psychiatrist, Dr. J.R. Musunuru. Valenti-Hein filed her examination report on September 1, 2023. Musunuru, however, did not file his report until September 5, 2023, one day before the final hearing.

¶5 At the final hearing, Mark objected to the circuit court's competency to proceed due to the County's failure to file Dr. Musunuru's report at least forty-eight hours before the hearing as required by WIS. STAT. § 51.20(10)(b). Mark also noted that, pursuant to the deadline set forth in § 51.20(7)(c), the final hearing could not be delayed any further, and, therefore, the court could not cure

the County's error by postponing the hearing. Mark declined to waive his right to have the final hearing held within fourteen days of his emergency detention.

¶6      The County conceded that it did not comply with WIS. STAT. § 51.20(10)(b)'s statutory deadline, but it argued that under § 51.20(10)(c), the circuit court should disregard its failure to timely file Dr. Musunuru's report because that failure did not affect the parties' substantial rights.[4]  Specifically, the County argued that Mark was not "impacted" by the County's failure because the County received Musunuru's report at the same time as Mark and because it did not plan to call Musunuru as a witness at the final hearing.

¶7      The circuit court agreed with the County and found that the County's failure to comply with the deadline in WIS. STAT. § 51.20(10)(b) did not affect Mark's substantial rights.  The court also found that it had "jurisdiction" to proceed with the final hearing.

¶8      The County then called the following witnesses: Mark's mother, who testified about the facts underlying the emergency detention; Dr. Valenti-Hein, who testified about her examination of Mark; and Robin Van Bogart, a clinical therapist and coordinator for the County's mental health court, who testified about her interactions with Mark as she evaluated him to participate in that court.  The circuit court found that Mark was mentally ill; a proper subject for treatment; dangerous under WIS. STAT. § 51.20(1)(a)2.b. and 2.c.; and not competent to refuse medication due to being incapable of applying an

---

[4] WISCONSIN STAT. § 51.20(10)(c) provides, in part:  "The [circuit] court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings that does not affect the substantial rights of either party."

understanding of the advantages and disadvantages of, and alternatives to, medication to his illness. The court then entered orders for Mark's involuntary commitment and allowing for the involuntary administration of medication and treatment. Mark now appeals.

## DISCUSSION

¶9 Mark argues that the circuit court lost competency to proceed with the final hearing for his WIS. STAT. ch. 51 commitment due to the County's failure to comply with the statutory deadline for the submission of the examiners' reports as provided in WIS. STAT. § 51.20(10)(b). Whether a circuit court has lost competency presents a question of law that we review de novo. *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶7, 273 Wis. 2d 76, 681 N.W.2d 190. Our review of competency also presents questions of statutory interpretation and application, both of which we review de novo. *See McNeil v. Hansen*, 2007 WI 56, ¶7, 300 Wis. 2d 358, 731 N.W.2d 273.

¶10 In *Mikrut*, our supreme court clarified the concept of competency, stating:

> [I]n Wisconsin, "no circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever." The "jurisdiction and the power of the circuit court is conferred not by act of the legislature, but by the Constitution itself." Thus, the subject matter jurisdiction of the circuit courts cannot be curtailed by state statute.
>
> We have recognized, however, that a circuit court's ability to exercise the subject matter jurisdiction vested in it by the constitution may be affected by noncompliance with statutory requirements pertaining to the invocation of that jurisdiction in individual cases. Because the circuit court's subject matter jurisdiction is plenary and constitutionally-based, however, noncompliance with such statutory mandates is not "jurisdictional" in that it does not negate the court's subject matter jurisdiction. Rather, a

failure to comply with a statutory mandate pertaining to the exercise of subject matter jurisdiction may result in a loss of the circuit court's competency to adjudicate the particular case before the court.

*Mikrut*, 273 Wis. 2d 76, ¶¶8-9 (footnote omitted; citations omitted).

¶11 In support of its argument that a violation of WIS. STAT. § 51.20(10)(b) does not cause a circuit court to lose competency, the County cites *Fond du Lac County v. S.N.W.*, No. 2019AP2073, unpublished slip op. (WI App June 17, 2020),[5] which it characterizes as "persuasive" and "directly on point." We do not find that case persuasive.

¶12 *S.N.W.* concerned a subject who was emergently detained under WIS. STAT. § 51.15. *S.N.W.*, No. 2019AP2073, ¶2. After a probable cause hearing, a psychologist and psychiatrist were ordered to examine the subject, and a final hearing was scheduled to determine whether the subject would be involuntarily committed pursuant to WIS. STAT. § 51.20. *S.N.W.*, No. 2019AP2073, ¶3. However, one of the examiners' reports was filed less than forty-eight hours before the final hearing, in violation of § 51.20(10)(b). *S.N.W.*, No. 2019AP2073, ¶3. The late report was received into evidence over the subject's objection, and the subject was ultimately involuntarily committed. *Id.*, ¶4.

¶13 On appeal, the subject argued, in part, that the circuit court lost competency to proceed with the final hearing due to the violation of WIS. STAT. § 51.20(10)(b). *S.N.W.*, No. 2019AP2073, ¶6. This court first noted that there is

---

[5] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

no case law concluding that a failure to comply with § 51.20(10)(b) results in the circuit court losing competency. ***S.N.W.***, No. 2019AP2073, ¶8. We then turned to § 51.20(10)(c), which states, in relevant part, "The [circuit] court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings that does not affect the substantial rights of either party," and it analyzed whether the late filing of the examiner's report affected the subject's substantial rights. ***S.N.W.***, No. 2019AP2073, ¶11.

¶14    In one sentence of ***S.N.W.***, we likened the circumstances of violating WIS. STAT. § 51.20(10)(b) to violating § 51.20(13)(g)2r., where the legislature provided that the late filing of an examiner's report does not result in a loss of the circuit court's competency over *recommitment* proceedings. ***S.N.W.***, No. 2019AP2073, ¶10. We further reasoned that, unlike the failure to hold a final hearing within the statutorily mandated time frames, the failure to timely submit an examiner's report does not extend a subject's detention, and, therefore, does not impact his or her liberty. ***Id.*** We then concluded that the subject failed to show a reasonable possibility that the error contributed to the outcome of the final hearing,[6] and, consequently, we concluded that the subject's substantial rights were not affected. ***Id.***, ¶¶12-13.

¶15    For several reasons, we disagree with ***S.N.W***'s conclusion that a WIS. STAT. ch. 51 subject's substantial rights are not affected by the late filing of an examiner's report, in violation of WIS. STAT. § 51.20(10)(b). "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' Statutory language is given its

---

[6] *See* ***State v. Dyess***, 124 Wis. 2d 525, 544, 370 N.W.2d 222 (1985).

common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." ***State ex. rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." ***Id.***, ¶46. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." ***Id.*** (citation omitted).

¶16    We first conclude that ***S.N.W***'s reliance on a comparison between WIS. STAT. § 51.20(13)(g)2r. and § 51.20(10)(b) was inapt, as the former statute differs significantly from the latter. Particularly, § 51.20(13)(g)2r. applies only to recommitment proceedings, contains a deadline for the filing of an examiner's report that is twenty-one days "prior to the expiration of the period of commitment," and explicitly contains a provision stating that a violation of its deadline does not affect the circuit court's jurisdiction. In contrast, § 51.20(10)(b) applies to initial commitment proceedings, contains a forty-eight hour deadline, and does not address jurisdiction.

¶17    Although ***S.N.W.*** drew a minor comparison between WIS. STAT. § 51.20(10)(b) and (13)(g)2r. based on the lack of *specific* direction in § 51.20(10)(b), we conclude that § 51.20(13)(g)2r. shows that the legislature was fully aware of how to provide for a circuit court's continued jurisdiction or competency despite the late filing of an examiner's report. Based upon the legislature's failure to include a similar provision in § 51.20(10)(b) for the court's continued competency in the event of the late filing of an expert's report, we

assume the legislature intended that a court would lose competency due to the late filing of an examiner's report in an initial commitment proceeding. *See **Dawson v. Town of Jackson***, 2011 WI 77, ¶42, 336 Wis. 2d 318, 801 N.W.2d 316 ("We decline to read into the statute words the legislature did not see fit to write."); *see also **Kalal***, 271 Wis. 2d 633, ¶44 (holding that "[w]e assume that the legislature's intent is expressed in the statutory language" and that "the purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect"). The fact that the legislature did not include the same language in § 51.20(10)(b) as it did in § 51.20(13)(g)2r. supports our conclusion that a court loses competency based upon the County's failure to timely file an examiner's report in an initial commitment proceeding.

¶18    Second, we turn to the due process protections that WIS. STAT. ch. 51 provides as a whole to subjects for whom an involuntary commitment is being sought. "The authority to confine an individual involuntarily to a mental health facility implicates a liberty interest protected by due process." *Dane County v. Stevenson L.J.*, 2009 WI App 84, ¶11, 320 Wis. 2d 194, 768 N.W.2d 223. In an effort to ensure that a subject's due process rights are not violated when seeking to have the subject involuntarily committed, the legislature has implemented several safeguards in ch. 51, including, as relevant here, a subject's right to counsel, the subject's right to be examined by two experts, and the subject's right to a final hearing within fourteen days of being emergently detained. *See* WIS. STAT. § 51.20(3), (5)(a), (7)(c), and (9)(a)1.

¶19    WISCONSIN STAT. § 51.15(1)(ag) provides that a subject may be emergently detained if the subject: (1) is "mentally ill, drug dependent, or developmentally disabled"; (2) evidences one of the standards of dangerousness set forth in § 51.15(1)(ar)1.-4.; and (3) is "reasonably believed to be unable or

unwilling to cooperate with voluntary treatment." Pursuant to WIS. STAT. § 51.20(7)(a), the circuit court must hold a probable cause hearing within seventy-two hours of the subject being detained, excluding Saturdays, Sundays, and legal holidays.

¶20 At a probable cause hearing under WIS. STAT. § 51.20(7), the circuit court must determine whether there is probable cause to believe that the subject is mentally ill, drug dependent, or developmentally disabled; a proper subject for treatment; and dangerous under § 51.20(1)(a)2.a.-e. If the court finds probable cause, it must schedule a final hearing within fourteen days "from the time of detention of the subject" and must appoint two experts to examine the subject. Sec. 51.20(7)(c), (9)(a)1. The examiners must make independent reports and file the reports with the court. Sec. 51.20(9)(a)5. Importantly, § 51.20(10)(b) provides that "[c]ounsel for the person to be committed *shall* have access to all psychiatric and other reports 48 hours in advance of the final hearing." (Emphasis added.)

¶21 Our supreme court has characterized these procedural guidelines as "strict." *Milwaukee County v. Louise M.*, 205 Wis. 2d 162, 171-72, 555 N.W.2d 807 (1996). It has stated that the deadline to hold the final hearing within fourteen days of a subject being detained is jurisdictional, and a circuit court loses competency if the deadline is not met. *Id.* Our supreme court later concluded that the deadline for holding a probable cause hearing within seventy-two hours of a subject being emergently detained is also jurisdictional. *Walworth County v. M.R.M.*, 2023 WI 59, ¶¶17-18, 408 Wis. 2d 316, 992 N.W.2d 809. This conclusion follows because "[a] circuit court's ability to exercise its subject matter jurisdiction in individual cases … may be affected by noncompliance with statutory requirements pertaining to the invocation of that jurisdiction." *Mikrut*,

273 Wis. 2d 76, ¶2; *see also* **M.R.M.**, 408 Wis. 2d 316, ¶17. In reaching this conclusion, the court stated:

> Whether a particular failure to comply with a statutory mandate implicates the circuit court's competency depends upon an evaluation of the effect of noncompliance on the court's power to proceed in the particular case before the court. Many errors in statutory procedure have no effect on the circuit court's competency. Only when the failure to abide by a statutory mandate is "central to the statutory scheme" of which it is a part will the circuit court's competency to proceed be implicated.

*Mikrut*, 273 Wis. 2d 76, ¶10 (citation omitted).

¶22 We conclude that the deadline set forth in WIS. STAT. § 51.20(10)(b) is "central to the statutory scheme" of WIS. STAT. ch. 51. *See Mikrut*, 273 Wis. 2d 76, ¶10 (citation omitted). As Mark correctly argues, the deadline in § 51.20(10)(b) is "inextricably tied" to the deadlines regarding the timing of a subject's final hearing. These deadlines impose strict time limits "to protect the significant liberty interests at stake when an individual is detained for mental health treatment." *See Jefferson County v. S.M.S.*, No. 2020AP814, unpublished slip op. ¶9 (WI App Mar. 11, 2021). Thus, failing to comply with these deadlines substantially affects a subject's due process rights. *See Dodge County v. Ryan E.M.*, 2002 WI App 71, ¶11, 252 Wis. 2d 490, 642 N.W.2d 592 ("Although protecting people from harm is important, so is due process, which the [seventy-two-hour limit for emergency detentions] is intended to provide."). Because the deadline set forth in § 51.20(10)(b) is central to the statutory scheme, the County's failure to file both of Mark's examiners' reports no later than

forty-eight hours in advance of the final hearing deprived the circuit court of competency.[7]

¶23 The forty-eight-hour rule is also inextricably linked to the strict requirement found in WIS. STAT. § 51.20(9)(a)1., providing that the circuit court shall appoint two examiners. When only one examiner's report is timely filed and the court nevertheless proceeds with a final hearing, the subject is deprived of that statutory right to two examiners. Violation of the right to two examiners is jurisdictional and implicates a circuit court's competency to proceed, despite the fact that it is not a hearing time limit. *See **Louise M.***, 205 Wis. 2d at 172-73.

¶24 Further, when both of the examiners' reports are not provided to the subject individual by WIS. STAT. § 51.20(10)(b)'s deadline, a subject is essentially denied his or her right to be examined by two experts and the above-mentioned due process protections are significantly weakened. As Mark correctly argues, "By requiring two evaluations from licensed [examiners], … the subject individual [is provided] with the protection that one doctor may not find commitment appropriate[,] or if both evaluations are in favor of commitment, it helps assuage concerns such as bias or corner-cutting."

¶25 In addition, merely disregarding an untimely filed examiner's report, as the County and circuit court did here, cannot cure the due process violation.

---

[7] To be clear, the circuit court's loss of competency here is predicated upon the fact that Mark's final hearing could not be delayed to a later date due to the statutory deadline provided in WIS. STAT. § 51.20(7)(c). Where a court can cure a violation of § 51.20(10)(b) by delaying the final hearing while simultaneously complying with § 51.20(7)(c), it retains competency to proceed with the final hearing. However, the court loses competency where: (1) an expert's report is not timely filed, (2) the final hearing cannot be delayed to cure the untimely filed report, and (3) the subject elects to not waive his or her right to a final hearing within the § 51.20(7)(c) deadline.

One or both of the expert's reports may contain information that is favorable to the subject, and the subject may wish to call one or both experts as a witness, even if the County does not.[8] As Mark correctly argues, overlooking the County's failure to timely file both examiners' reports incentivizes continued violations of the filing time limit, and it prevents the subject from fully preparing for the final hearing and potentially benefitting from what may be helpful evidence.

¶26 The failure to comply with WIS. STAT. § 51.20(10)(b) also negatively affects the subject's right to effective counsel. Mark correctly contends that "[e]ven in instances where doctors agree, adversary counsel has the opportunity and duty to point out inconsistencies or errors in observations or conclusions, thereby undermining the weight of the evidence, to fulfill the individual's right to a full and meaningful defense." Counsel's ability to prepare for a final hearing and effectively represent a subject individual may be significantly hampered if both examiners' reports are not timely available.

## CONCLUSION

¶27 We conclude that a subject's substantial rights are affected by the late filing of an examiner's report in violation of WIS. STAT. § 51.20(10)(b). The failure to timely file both experts' reports essentially deprives a subject of the statutory right to two examiners, prevents a subject from effectively preparing for his or her final hearing, interferes with the subject's right to effective assistance of counsel, may deprive the subject of essential evidence, and incentivizes the late

---

[8] This is particularly true when the appointed experts come from different specialties—such as one expert being a psychologist and the other being a psychiatrist—which is the case here.

13

filing of reports, particularly those that may otherwise be helpful to the subject. *See* § 51.20(5)(a). The expert report filing deadline is therefore not merely a technical requirement; instead, the filing deadline is central to the statutory scheme of WIS. STAT. ch. 51.

¶28 Consequently, the circuit court in this case lost competency to proceed with Mark's final hearing due to the County's failure to timely file Dr. Musunuru's report. We therefore reverse the orders for Mark's involuntary commitment and involuntary medication and treatment.

*By the Court.*—Orders reversed.

Recommended for publication in the official reports.