In the MATTER OF MICHAEL J.K., Alleged to be an Alcoholic:

COUNTY OF DODGE, Plaintiff-Appellant,

v.

MICHAEL J.K., Respondent.†

Court of Appeals

*No. 96–2250. Submitted on briefs January 16, 1997.—Decided March 20, 1997.*

(Also reported in 564 N.W.2d 350.)

†Petition to review denied.

For the petitioner-appellant the cause was submitted on the briefs of *Joseph Ruf III*, assistant corporation counsel for Dodge County.

For the respondent the cause was submitted on the brief of *William E. Schmaal*, assistant state public defender.

Before Eich, C.J., Dykman, P.J., and Vergeront, J.[1]

EICH, C.J. Dodge County appeals from an order dismissing an involuntary commitment proceeding for Michael J.K., an alleged alcoholic.

The County argues that the trial court erred in concluding that the language of § 51.45(13)(e), STATS., which states, among other things, that the person sought to be committed "shall have access" to all psychiatric and other records and reports, requires the County to file treatment reports and records with the trial court before proceeding to a final commitment hearing. We conclude that the County correctly reads the statute and we therefore reverse the order.

The facts are not in dispute. After the County petitioned for Michael's commitment under chapter 51, STATS., he was temporarily detained at a treatment facility and examined by a staff physician. A preliminary hearing was held and the trial court, finding probable cause to believe that Michael required treatment for alcoholism, scheduled a final hearing on the petition.

When the County, as required by § 51.45(13)(e), STATS., served Michael's attorney with a list of witnesses who would testify at the hearing—including the physician who examined him—together with a summary of their proposed testimony, Michael moved to dismiss the proceedings, arguing that because the County had not affirmatively provided him with the physician's written report—or at least filed it with the court—the court lacked jurisdiction to consider the

---

[1] This was originally a one-judge appeal pursuant to § 752.31(2), STATS., but was ordered brought before the full panel pursuant to § 809.41(3), STATS.

matter further. The trial court agreed, dismissing the commitment petition, and the County appeals.

A single issue is dispositive of the appeal: Whether the "access" provisions of § 51.45(13)(e), STATS., require the County to file the specified records and reports with the trial court prior to any final commitment proceeding. The statute provides that, after a finding of probable cause at the preliminary hearing, the court must set a final hearing to be held within fourteen days. It goes on to state:

> Counsel, or the person [sought to be committed] . . . *shall have access to all reports and records*, psychiatric and otherwise, which have been made prior to the full hearing on commitment, and *shall be given the names of all persons who may testify* in favor of commitment and a summary of their proposed testimony at least 96 hours before the full hearing, exclusive of [weekends] and holidays.[2]

(Emphasis added.)

Interpretation and application of a statute are questions of law which we review *de novo* without deference to the trial court's decision. *State v. Sostre*, 198 Wis. 2d 409, 414, 542 N.W.2d 774, 776 (1996). The purpose of statutory construction is to ascertain the legislature's intent, and our first inquiry is always to the language of the statute. *Cary v. City of Madison*, 203 Wis. 2d 261, 264-65, 551 N.W.2d 596, 597 (Ct. App. 1996). If the statute is clear on its face, our inquiry ends, for we do not look behind the plain and unambig-

---

[2] There is no dispute concerning the requirement that the witness list be served 96 hours prior to the hearing. Michael concedes that the County satisfied this requirement.

uous language of legislation. *In re Peter B.*, 184 Wis. 2d 57, 70-71, 516 N.W.2d 746, 752 (Ct. App. 1994).

The legislature has provided no guidance to the meaning of the statutory phrase "shall have access," and the County argues none is needed. It maintains that the phrase is unambiguous: Given its ordinary and accepted meaning—its dictionary definition—it plainly requires only that access be provided and imposes no affirmative duty of production.

Section 990.01(1), STATS., provides that statutory words and phrases "shall be construed according to common and approved usage," and we have frequently recognized dictionaries as an appropriate source of such usage. *State v. McCoy*, 143 Wis. 2d 274, 287, 421 N.W.2d 107, 111 (1988). THE AMERICAN HERITAGE DICTIONARY (2d ed. 1982) defines "access" as "the right to enter or make use of," as opposed to "give," which it defines as "to place in the hands of; [to] pass." *Id.* at 71, 559.

Michael disagrees. He contends that the phrase "shall have access" is ambiguous because it is "susceptible to two different, reasonable interpretations." He says it can be read either as requiring the treatment facility to allow him to inspect the records, or as requiring the County to obtain copies of his medical records from the treatment facility and file them with the court.

Whether a statute is ambiguous is a question of law, which we review independently, owing no deference to the trial court's decision. *First Fed. Savs. Bank v. LIRC*, 200 Wis. 2d 786, 794, 547 N.W.2d 796, 800 (Ct. App. 1996). A statute is ambiguous when its language "may be reasonably construed in two different ways."

*Richland Valley Prods., Inc. v. St. Paul Fire & Casualty Co.*, 201 Wis. 2d 161, 169 n.1, 548 N.W.2d 127, 130 (Ct. App. 1996) (quotations and quoted source omitted). But ambiguity does not arise just because persons may reach different conclusions with respect to the meaning of words, or may interpret them differently. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 662, 539 N.W.2d 98, 103 (1995); *State ex rel. Girouard v. Circuit Court*, 155 Wis. 2d 148, 155, 454 N.W.2d 792, 795 (1990).

We see the statute as plain and unambiguous in its meaning. We presume that the legislature "cho[o]se[s] its terms carefully and precisely to express its meaning," *State v. McKenzie*, 139 Wis. 2d 171, 177, 407 N.W.2d 274, 277 (Ct. App. 1987), and we think it did so here. In the same statutory subsection the legislature used the words "shall be given" when providing for disclosure of witnesses' names, and elected to require something less with respect to reports and records—not that they be "given" or delivered but that the subject simply have "access" to them. They are, as indicated above, contrasting concepts. And "where the legislature uses similar but different terms in a statute, particularly within the same section, we may presume it intended the terms to have different meanings." *Graziano v. Town of Long Lake*, 191 Wis. 2d 812, 822, 530 N.W.2d 55, 59 (Ct. App. 1995). Surely if the legislature had intended that, like the witness list, the records were to be "given" or delivered to the subject of the proceedings, it could—and would—have said so.

Again, Michael disagrees. He calls our attention to a provision in § 51.30(4)(b)11, STATS., that allows the subject's attorney access to treatment records without the subject's "informed written consent" in order to prepare for involuntary commitment hearings, and he says that because there is no need to provide for "the

very same thing" in § 51.45(13)(e), STATS., the legislature must have intended the latter statute to "be considered differently" to avoid rendering its language superfluous. He does not, say, however, what that "different treatment" might be, other than to state that it imposes a duty on the County to "obtain[ ] copies of the records from the treatment facility . . . and fil[e] the[m] in the trial court."

First, the argument is largely unexplained. Second, its major premise—which we presume to be that the phrase stating that the records "may be released" to the attorney under § 51.30(4)(b)11, STATS., imposes the duty of obtaining and delivering the records on the County—is unsupported by reference to any legal or interpretative authority.

Finally, § 51.30(4)(b), STATS., serves a very different purpose. It is a lengthy statute dealing with the confidentiality of "registration and treatment records" under the Mental Health Act, and it states that such records "may be released only to [designated] persons." Section 51.30(4). It then goes on to list some twenty-four persons who are entitled to "[a]ccess" the records without first obtaining the "informed written consent" of the person undergoing the treatment—as would otherwise be required. Section 51.30(4)(b)1-24. Number eleven on the list is "the subject individual's counsel or guardian," to whom such access may be granted "at any time in order to prepare for involuntary commitment . . . proceedings." Section 51.30(4)(b)11. The statute eases that access by removing an otherwise applicable legal barrier. Section 51.45(13)(e), on the other hand, is—as we also noted—a specific provision dealing with how and when such information is to be provided in the context of a commitment proceeding. We do not see the

two statutes as giving rise to superfluity, as Michael suggests in his brief.[3]

Then, referring to § 908.03(6m)(c)3, STATS., which he claims gives a treatment facility "two business days" to comply with a request for copies of its records, and to § 51.45(13)(b)4, which requires the court to schedule a preliminary hearing on a commitment petition within seventy-two hours (when the subject is in custody), Michael claims that, subtracting forty-eight hours ("two business days") from seventy-two hours, the two statutes, taken together, could leave him with insufficient time to prepare for the preliminary hearing. He

---

[3] Michael also argues that because the phrase "shall have access to" appears in § 51.45(13)(d), STATS., which gives counsel at the preliminary hearing access to reports compiled up to that time, and also in § 51.45(13)(e), which, as we discussed, gives counsel appearing at the final hearing access to reports compiled up to *that* time, "an unreasonable result would certainly ensue if those phrases are construed in such a way that the . . . County has no corresponding duty to facilitate the individual's access."

While we agree that identical language in different subsections of the same statute should be construed consistently, *State v. Williams*, 198 Wis. 2d 479, 491, 544 N.W.2d 400, 405 (1996), the argument goes no further than that, and again, its major premise—which we infer from the quoted statement to be that § 51.45(13)(d), STATS., imposes some undefined "duty to facilitate . . . access"—is unsupported by any developed argument or citation to authority. We have frequently said that we will not consider such arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633, 642 (Ct. App. 1992) (court of appeals will decline to consider arguments which are not developed themes reflecting any legal reasoning, but are supported only by general statements); *State v. Shaffer*, 96 Wis. 2d 531, 545-46, 292 N.W.2d 370, 378 (Ct. App. 1980) (we need not consider arguments unsupported by citations to authority).

takes the argument no further, however, other than to state that because of this, somehow, the "shall have access" clause in § 51.45(13)(e) "should be construed to imply a . . . duty on the [County] to file the treatment records in the trial court at or before the final hearing."

Again, the argument is undeveloped. *See supra* note 3. Also, as before, its major premise fails. Not only is § 51.45(13)(b)4, STATS., applicable to the preliminary hearing—of which Michael does not complain on this appeal—but § 908.03(6m)(c)3, STATS., upon which Michael's argument is based is part of the evidence code detailing the various exceptions to the hearsay rule. Considered in context, the statute says only that "[h]ealth care provider records" are not subject to subpoena unless, among other things, the provider fails or neglects to supply a copy of its records after an attorney has requested the records and paid the fee set by the Department of Health and Family Services. Michael has made no argument as to how or why a rule of evidence relating to use of the subpoena power in the context of the hearsay rule can or should apply to the provisions of chapter 51 at issue here.[4]

---

[4] Finally, Michael lists several "non-statutory reasons" for upholding the trial court's ruling that "access" in § 51.45(13)(e), STATS., should be interpreted as "delivery." We quote them verbatim:

> *Fundamentally, it is the . . . County's lawsuit,* not the treatment facility's lawsuit.
>
> Accordingly, it should properly be the County's burden (through its legal counsel) to satisfy the opposing party's statutory rights of discovery.
>
> *Further, it would tend to enhance the truth-finding function of the final commitment hearing* if copies of the person's treatment records were readily available to the trial court and to counsel for both parties at that time.
>
> This is particularly true in cases where the petitioner proposes to prove its case entirely *by telephonic testimony* from the health

■

We therefore reverse and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.

---

care provider *as he or she refers to the written records*, as the County did here.

(Emphasis in original.)

The "arguments" are really no more than statements as to why the legislature should impose a requirement on petitioners in commitment proceedings to obtain and deliver to counsel, or the court, copies of reports relating to the subject of the proceedings. As we held above, the legislature, in enacting the plainly worded provisions of § 51.45(13)(e), STATS., chose not to do so, and Michael's public-policy arguments as to why it should are properly directed to that branch of government, not this one. *Employers Health Ins. Co. v. Tesmer*, 161 Wis. 2d 733, 740-41, 469 N.W.2d 203, 206 (Ct. App. 1991).