**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**May 20, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP250**

Cir. Ct. No.  **2023ME194**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

IN THE MATTER OF THE MENTAL COMMITMENT OF M. J. B.:

OUTAGAMIE COUNTY,

  PETITIONER-RESPONDENT,

 V.

M. J. B.,

  RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Outagamie County: YADIRA REIN, Judge. *Reversed.*

Before Stark, P.J., Hruz, and Gill, JJ.

¶1 STARK, P.J.[1] Mark[2] appeals orders entered for his involuntary commitment pursuant to WIS. STAT. § 51.20 and for his involuntary medication and treatment pursuant to WIS. STAT. § 51.61(1)(g). Mark argues that the circuit court lacked competency to proceed with the final hearing for his involuntary commitment because one of two examiners' reports was not made accessible to his attorney 48 hours in advance of his final hearing, as required by § 51.20(10)(b).[3]

¶2 We conclude that WIS. STAT. § 51.20(10)(b)'s mandated time limit to make both examiners' reports accessible to counsel for the person to be committed is central to the statutory scheme of WIS. STAT. ch. 51. Therefore, a failure to comply with that statute's mandate substantially affects the rights of an individual subject to commitment and deprives the circuit court of competency. Accordingly, we determine that the court lost competency to proceed with the

---

[1] Pursuant to WIS. STAT. § 752.31 (2023-24), cases under WIS. STAT. ch. 51 (2023-24) are decided by one judge. However, upon reviewing the briefs in this matter, this court determined that the issue raised by the appellant warranted consideration by three judges and subsequently sua sponte ordered that this case be decided by three judges. *See* WIS. STAT. RULE 809.41(3) (2023-24).

All references to the Wisconsin Statutes are to the 2023-24 version.

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

[3] WISCONSIN STAT. § 51.20(9)(a)1. provides:

> If the court finds after the hearing that there is probable cause to believe the allegations under sub. (1), it shall appoint 2 licensed physicians specializing in psychiatry, or one licensed physician and one licensed psychologist, or 2 licensed physicians one of whom shall have specialized training in psychiatry, if available, or 2 physicians, to personally examine the subject individual.

We interchangeably use the terms "examiner" and "expert" throughout this opinion to refer to the expert examiners required by WIS. STAT. § 51.20(9)(a)1.

final hearing on Mark's ch. 51 commitment because one of two required examiners' reports was not accessible by Mark's counsel 48 hours prior to the final hearing. Consequently, we reverse the court's commitment and medication and treatment orders.[4]

---

[4] Outagamie County filed a motion for reconsideration after our original release of this opinion, arguing that we erred by stating both that *the County* failed to comply with the deadline set forth in WIS. STAT. § 51.20(10)(b) and that *the County* was required to provide the experts' reports to Mark's attorney. We note that the County did not previously respond to Mark's argument that the County was responsible for the late filing of one examiner's report in the circuit court or on appeal. Nevertheless, we withdrew our decision in order to modify it in light of the County's arguments.

The County correctly notes that the relevant statutes are silent as to the party responsible for the timely filing of the examiners' reports and that WIS. STAT. § 51.20(10)(b) merely provides that the subject's counsel shall have access to the reports 48 hours prior to the final hearing. However, as Mark correctly argues,

> Chapter 51 is designed to place the burden of upholding and protecting the various due process rights of the person the County is seeking to involuntarily commit on the government…. It is not the subject's personal responsibility to handle his [or her] case with the "utmost diligence and care" to ensure that this statutory framework is complied with and his [or her] due process rights are not violated[;] it is the government's.

*See Dane County v. Stevenson L.J.*, 2009 WI App 84, ¶¶11-12, 320 Wis. 2d 194, 768 N.W.2d 223; *Marathon County v. D.K.* 2020 WI 8, ¶26, 390 Wis. 2d 50, 937 N.W.2d 901.

Further, as the entity seeking to have a subject committed, and the party with the burden of proof, it would seem that the County would be incentivized to ensure that the mandatory procedural guidelines of WIS. STAT. ch. 51 are followed. In addition, we note that both the petitioner and the subject individual benefit from the timely filing of both experts' reports under WIS. STAT. § 51.20(10)(b), as this process ensures that the circuit court retains competency and both parties have time to review the reports and to prepare for the final hearing.

Regardless, as Mark correctly argues, determining who bears the responsibility for ensuring that both experts' reports are timely filed and available to counsel "does not change the reasoning in this [c]ourt's opinion. The question is not about which actor within the government should be at 'fault' for a violation" of Mark's due process rights; instead the question is whether the circuit court loses competency as a result of the violation of those rights.

3

**BACKGROUND**

¶3      Mark was emergently detained, pursuant to WIS. STAT. § 51.15, on August 23, 2023, after Mark destroyed property at his mother's home and caused her to be fearful for her safety.  A hearing was held on August 28, 2023, to determine whether there was probable cause to have Mark involuntarily committed under WIS. STAT. § 51.20.  The circuit court found there was probable cause to believe that Mark was mentally ill, a proper subject for treatment, and dangerous to himself or others.  It ordered that Mark be evaluated by two experts and scheduled a final hearing for September 6, 2023.

¶4      Mark was examined by Dr. Denise Valenti-Hein, a psychologist, and Dr. J. R. Musunuru, a psychiatrist.  Valenti-Hein filed her examination report on September 1, 2023.  However, the clerk of circuit court did not file Musunuru's report until September 5, 2023, one day before the final hearing.  *See infra* note 5.

¶5      At the final hearing, Mark objected to the circuit court's competency to proceed, arguing that his counsel was not provided with Dr. Musunuru's expert report at least 48 hours before the hearing as required by WIS. STAT. § 51.20(10)(b).  Mark also noted that, pursuant to the deadline set forth in § 51.20(7)(c), the final hearing could not be delayed any further, and, therefore, the court could not cure the error by postponing the hearing due to what Mark asserted was the County's error in failing to timely make available and file the

expert's report. Mark declined to waive his right to have the final hearing held within 14 days of his emergency detention.[5]

¶6      The County argued that the circuit court did not "lose jurisdiction" because the County had also received Dr. Musunuru's report after the statutory deadline. It asserted, however, that the late filing of Musunuru's report did not affect Mark's substantial rights, and, therefore, pursuant to WIS. STAT. § 51.20(10)(c), the court should disregard the error and proceed with the final hearing.[6] Specifically, the County argued that Mark was not "impacted" by his counsel's lack of timely access to the report because the County received Musunuru's report at the same time as Mark and because the County did not plan to call Musunuru as a witness at the final hearing.

¶7      The circuit court agreed with the County and found that the failure to comply with the deadline in WIS. STAT. § 51.20(10)(b) did not affect Mark's substantial rights. The court also found that it had "jurisdiction" to proceed with the final hearing.

---

[5] After we rereleased our revised opinion, the County filed a petition for review in which it noted, for the first time, that Dr. Musunuru's report was faxed to the clerk of circuit court on September 2, 2023, but it was not filed by the clerk until the morning of September 5, 2023. In support of this statement, the County cites Musunuru's report, which has a date of September 2, 2023, on the top left corner of the page and is stamped by the clerk as having been filed on September 5, 2023. We note that Mark's counsel stated at the final hearing that he was not provided access to Musunuru's report until the morning of September 5, and the County did not dispute this fact. To the extent that the County intends to argue that Musunuru's report was somehow accessible by Mark's counsel on September 2, we reject that argument as forfeited. *See* ***Town of Mentor v. State***, 2021 WI App 85, ¶46, 400 Wis. 2d 138, 968 N.W.2d 716 (stating that "[a]s a general rule, issues not raised in the circuit court will not be considered for the first time on appeal." (citation omitted)).

[6] WISCONSIN STAT. § 51.20(10)(c) provides, in part: "The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings that does not affect the substantial rights of either party."

¶8 The County then called the following witnesses: Mark's mother, who testified about the facts underlying the emergency detention; Dr. Valenti-Hein, who testified about her examination of Mark; and Robin Van Bogart, a clinical therapist and coordinator for the County's mental health court, who testified about her interactions with Mark as she had evaluated him to participate in that court. The circuit court found that Mark was mentally ill; a proper subject for treatment; dangerous under WIS. STAT. § 51.20(1)(a)2.b. and 2.c.; and not competent to refuse medication as he was incapable of applying an understanding of the advantages and disadvantages of, and alternatives to, medication in order to make an informed choice as to whether to accept or refuse medication or treatment. The court entered orders for Mark's involuntary commitment and for the involuntary administration of medication and treatment. Mark now appeals.

## DISCUSSION

¶9 Mark argues that the circuit court lost competency to proceed with the final hearing for his WIS. STAT. ch. 51 commitment due to what he asserts was the County's failure to make both examiners' reports accessible to his counsel by the statutory deadline in WIS. STAT. § 51.20(10)(b). Whether a court lost competency presents a question of law that we review de novo. *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶7, 273 Wis. 2d 76, 681 N.W.2d 190. Our review of competency also presents questions of statutory interpretation and application, both of which we review de novo. *See McNeil v. Hansen*, 2007 WI 56, ¶7, 300 Wis. 2d 358, 731 N.W.2d 273.

¶10 In *Mikrut*, our supreme court clarified the concept of competency, stating:

> [I]n Wisconsin, "no circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever." The "jurisdiction and the power of the circuit court is conferred not by act of the legislature, but by the Constitution itself." Thus, the subject matter jurisdiction of the circuit courts cannot be curtailed by state statute.
>
> We have recognized, however, that a circuit court's ability to exercise the subject matter jurisdiction vested in it by the constitution may be affected by noncompliance with statutory requirements pertaining to the invocation of that jurisdiction in individual cases. Because the circuit court's subject matter jurisdiction is plenary and constitutionally-based, however, noncompliance with such statutory mandates is not "jurisdictional" in that it does not negate the court's subject matter jurisdiction. Rather, a failure to comply with a statutory mandate pertaining to the exercise of subject matter jurisdiction may result in a loss of the circuit court's competency to adjudicate the particular case before the court.

*Mikrut*, 273 Wis. 2d 76, ¶¶8-9 (footnote omitted; citations omitted).

¶11 In support of its argument that a violation of WIS. STAT. § 51.20(10)(b) does not cause a circuit court to lose competency, the County cites *Fond du Lac County v. S.N.W.*, No. 2019AP2073, unpublished slip op. (WI App June 17, 2020),[7] which it characterizes as "persuasive" and "directly on point."

¶12 *S.N.W.* concerned a subject who was emergently detained under WIS. STAT. § 51.15. *S.N.W.*, No. 2019AP2073, ¶2. After a probable cause hearing, a psychologist and psychiatrist were ordered to examine the individual, and a final hearing was scheduled to determine whether the subject would be involuntarily committed pursuant to WIS. STAT. § 51.20. *S.N.W.*, No. 2019AP2073, ¶3. However, one of the examiners' reports was not accessible

---

[7] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

by the subject individual's counsel at least 48 hours before the final hearing, in violation of § 51.20(10)(b). ***S.N.W.***, No. 2019AP2073, ¶3. The late report was received into evidence over the subject's objection, and the subject was ultimately involuntarily committed. ***Id.***, ¶4.

¶13 On appeal, the subject argued, in part, that the circuit court lost competency to proceed with the final hearing due to the violation of WIS. STAT. § 51.20(10)(b). ***S.N.W.***, No. 2019AP2073, ¶6. This court first noted that there was no case law concluding that a failure to comply with § 51.20(10)(b) results in the circuit court losing competency. ***S.N.W.***, No. 2019AP2073, ¶8. We then turned to § 51.20(10)(c), which states, in relevant part, "The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings that does not affect the substantial rights of either party," and we analyzed whether the late filing of the examiner's report affected the subject's substantial rights. ***S.N.W.***, No. 2019AP2073, ¶11.

¶14 In one sentence of ***S.N.W.***, we likened the circumstances of violating WIS. STAT. § 51.20(10)(b) to violating § 51.20(13)(g)2r., where the legislature provided that the late filing of an examiner's report does not result in a loss of the circuit court's competency over *recommitment* proceedings. ***S.N.W.***, No. 2019AP2073, ¶10. We further reasoned that, unlike the failure to hold a final hearing within the statutorily mandated time frames, the failure to timely file an examiner's report does not extend a subject's detention, and, therefore, does not impact his or her liberty. ***Id.*** We then concluded that the subject failed to show a reasonable possibility that the error contributed to the outcome of the final

hearing,[8] and, consequently, we concluded that the individual's substantial rights were not affected. *Id.*, ¶¶12-13.

¶15    For several reasons, we do not find persuasive *S.N.W.*'s conclusion that a WIS. STAT. ch. 51 subject's substantial rights are not affected by the subject's counsel's inability to timely access an examiner's report in violation of WIS. STAT. § 51.20(10)(b). "[S]tatutory interpretation 'begins with the language of the statute.  If the meaning of the statute is plain, we ordinarily stop the inquiry.'  Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *State ex. rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted).  "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46.  "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.* (citation omitted).

¶16    We first conclude that *S.N.W.*'s reliance on a comparison between WIS. STAT. § 51.20(13)(g)2r. and § 51.20(10)(b) was inapt, as the former statute differs significantly from the latter.  Particularly, § 51.20(13)(g)2r. applies only to recommitment proceedings, contains a deadline for the filing of an examiner's report that is 21 days "prior to the expiration of the period of commitment," and explicitly contains a provision stating that a violation of its deadline does not

---

[8] *See* **State v. Dyess**, 124 Wis. 2d 525, 544, 370 N.W.2d 222 (1985).

affect the circuit court's jurisdiction. In contrast, § 51.20(10)(b) applies to initial commitment proceedings, contains a 48-hour deadline for making the examiners' reports accessible to counsel for an individual subject to commitment, and does not address jurisdiction.

¶17 As to the last point, we note that WIS. STAT. § 51.20(13)(g)2r. shows that the legislature was fully aware of how to provide for a circuit court's continued jurisdiction or competency despite the fact that the examiners' reports were not timely accessible to counsel. Based upon the legislature's failure to include a similar provision in § 51.20(10)(b), we assume the legislature intended that a court would lose competency if the mandated timing requirement in § 51.20(10)(b) were not met in an initial commitment proceeding. *See Dawson v. Town of Jackson*, 2011 WI 77, ¶42, 336 Wis. 2d 318, 801 N.W.2d 316 ("We decline to read into the statute words the legislature did not see fit to write."); *see also Kalal*, 271 Wis. 2d 633, ¶44 (holding that "[w]e assume that the legislature's intent is expressed in the statutory language" and that "the purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect"). The fact that the legislature did not include the same language in § 51.20(10)(b) as it did in § 51.20(13)(g)2r. supports our conclusion that a court loses competency when both examiners' reports are not made available to the subject's counsel within 48 hours of an initial commitment proceeding.

¶18 Second, we turn to the due process protections that WIS. STAT. ch. 51 provides to subjects in involuntary commitment proceedings. "The authority to confine an individual involuntarily to a mental health facility implicates a liberty interest protected by due process." *Dane County v. Stevenson L.J.*, 2009 WI App 84, ¶11, 320 Wis. 2d 194, 768 N.W.2d 223. In an effort to

ensure that a subject's due process rights are not violated, the legislature has implemented several safeguards in ch. 51, including, as relevant here, a subject's right to counsel, the subject's right to be examined by 2 experts, and the subject's right to a final hearing within 14 days of being emergently detained. *See* WIS. STAT. § 51.20(3), (5)(a), (7)(c), and (9)(a)1.

¶19     WISCONSIN STAT. § 51.15(1)(ag) provides that a subject may be emergently detained if the subject: (1) is "mentally ill, drug dependent, or developmentally disabled"; (2) evidences one of the standards of dangerousness set forth in § 51.15(1)(ar)1.-4.; and (3) is "reasonably believed to be unable or unwilling to cooperate with voluntary treatment."  Pursuant to WIS. STAT. § 51.20(7)(a), the circuit court must hold a probable cause hearing within 72 hours of the subject being detained, excluding Saturdays, Sundays, and legal holidays.

¶20     At a probable cause hearing under WIS. STAT. § 51.20(7), the circuit court must determine whether there is probable cause to believe that the subject is mentally ill, drug dependent, or developmentally disabled; a proper subject for treatment; and dangerous under § 51.20(1)(a)2.a.-e.  If the court finds probable cause, it must schedule a final hearing within 14 days "from the time of detention of the subject" and must appoint 2 experts to examine the subject individual. Sec. 51.20(7)(c), (9)(a)1.  The examiners must make independent reports and file the reports with the court.  Sec. 51.20(9)(a)5.  Importantly, § 51.20(10)(b) provides that "[c]ounsel for the person to be committed *shall* have access to all psychiatric and other reports 48 hours in advance of the final hearing."  (Emphasis added.)

¶21     Our supreme court has characterized these procedural guidelines as "strict."  *Milwaukee County v. Louise M.*, 205 Wis. 2d 162, 171-72, 555 N.W.2d

11

807 (1996). It has stated that the deadline to hold the final hearing within 14 days of a subject being detained is jurisdictional, and a circuit court loses competency if that deadline is not met. *Id.* Our supreme court later concluded that the deadline for holding a probable cause hearing within 72 hours of a subject being emergently detained is also jurisdictional. *Walworth County v. M.R.M.*, 2023 WI 59, ¶¶17-18, 408 Wis. 2d 316, 992 N.W.2d 809. This conclusion follows because "[a] circuit court's ability to exercise its subject matter jurisdiction in individual cases … may be affected by noncompliance with statutory requirements pertaining to the invocation of that jurisdiction." *Mikrut*, 273 Wis. 2d 76, ¶2; *see also M.R.M.*, 408 Wis. 2d 316, ¶17. The *Mikrut* court explained:

> Whether a particular failure to comply with a statutory mandate implicates the circuit court's competency depends upon an evaluation of the effect of noncompliance on the court's power to proceed in the particular case before the court. Many errors in statutory procedure have no effect on the circuit court's competency. Only when the failure to abide by a statutory mandate is "central to the statutory scheme" of which it is a part will the circuit court's competency to proceed be implicated.

*Mikrut*, 273 Wis. 2d 76, ¶10 (citation omitted).

¶22 We conclude that the deadline set forth in WIS. STAT. § 51.20(10)(b) is "central to the statutory scheme" of WIS. STAT. ch. 51. *See Mikrut*, 273 Wis. 2d 76, ¶10 (citation omitted). As Mark correctly argues, the deadline in § 51.20(10)(b) is "inextricably tied" to the deadlines regarding the timing of a subject's final hearing. These deadlines impose strict time limits "to protect the significant liberty interests at stake when an individual is detained for mental health treatment." *See Jefferson County v. S.M.S.*, No. 2020AP814, unpublished slip op., ¶9 (WI App Mar. 11, 2021). Thus, failing to comply with these deadlines substantially affects a subject individual's due process rights. *See Dodge County*

12

*v. Ryan E.M.*, 2002 WI App 71, ¶11, 252 Wis. 2d 490, 642 N.W.2d 592 ("Although protecting people from harm is important, so is due process, which the [72-hour limit for emergency detentions] is intended to provide."). Because the deadline set forth in § 51.20(10)(b) is central to the statutory scheme, the failure to have both of the examiners' reports accessible by Mark's counsel no later than 48 hours in advance of the final hearing deprived the circuit court of competency.[9]

¶23 The 48-hour rule is also inextricably linked to the strict requirement found in WIS. STAT. § 51.20(9)(a)1., providing that the circuit court shall appoint 2 examiners. When only one examiner's report is timely accessible by a subject's counsel and the court nevertheless proceeds with a final hearing, the subject is deprived of his or her statutory right to two examiners. Violation of the right to two examiners is jurisdictional and implicates a court's competency to proceed, despite the fact that it is not a hearing time limit. *See Louise M.*, 205 Wis. 2d at 172-73.

¶24 Further, when both of the examiners' reports are not timely accessible by the subject individual's counsel and the subject is essentially denied his or her right to be examined by two experts, due process protections are significantly weakened. As Mark correctly argues, "By requiring two evaluations

---

[9] To be clear, the circuit court's loss of competency here is predicated upon the fact that Mark's final hearing could not be delayed to a later date due to the statutory deadline provided in WIS. STAT. § 51.20(7)(c). Where a court can cure a violation of § 51.20(10)(b) by delaying the final hearing while simultaneously complying with § 51.20(7)(c), it retains competency to proceed with the final hearing. However, the court loses competency where: (1) one or both experts' reports are not filed, *see* § 51.20(9)(a)5.; (2) both experts' reports are not accessible by the subject's counsel 48 hours prior to the final hearing, *see* § 51.20(10)(b); (3) the final hearing cannot be delayed to cure the failure to file a report or have it accessible by the subject's counsel, *see* § 51.20(10)(e); and (4) the subject elects not to waive his or her right to a final hearing within the § 51.20(7)(c) deadline, *see* § 51.20(8)(bg).

from licensed [examiners], … the subject individual [is provided] with the protection that one doctor may not find commitment appropriate[,] or if both evaluations are in favor of commitment, it helps assuage concerns such as bias or corner-cutting."

¶25    In addition, merely disregarding the report that is not timely accessible by the subject's counsel, as the County and the circuit court did here, cannot cure the due process violation.  One or both of the experts' reports may contain information that is favorable to the subject, and the subject may wish to call one or both experts as a witness, even if the County does not.[10]  As Mark correctly argues, overlooking the failure to timely make accessible both examiners' reports incentivizes continued violations of the statutory time limit, and it prevents the subject from fully preparing for the final hearing and potentially benefitting from what may be helpful evidence.

¶26    The failure to comply with WIS. STAT. § 51.20(10)(b) also negatively affects the subject's right to effective counsel.  Mark correctly contends that "[e]ven in instances where doctors agree, adversary counsel has the opportunity and duty to point out inconsistencies or errors in observations or conclusions, thereby undermining the weight of the evidence, to fulfill the individual's right to a full and meaningful defense."  Counsel's ability to prepare

---

[10] This is particularly true when the appointed experts come from different specialties—such as one expert being a psychologist and the other being a psychiatrist—which is the case here.

14

for a final hearing and effectively represent a subject individual may be significantly hampered if both examiners' reports are not timely accessible.[11]

## CONCLUSION

¶27 We conclude that a subject's substantial rights in a WIS. STAT. ch. 51 proceeding are affected by his or her counsel's inability to timely access an examiner's report in violation of WIS. STAT. § 51.20(10)(b). The failure to timely make both experts' reports accessible to a subject individual's counsel necessarily deprives a subject of the statutory right to two examiners;

---

[11] The County additionally argued in its petition for review that our decision is "clearly contradictory" to *County of Dodge v. Michael J.K.*, 209 Wis. 2d 499, 564 N.W.2d 350 (Ct. App. 1997). In that case this court considered "[w]hether the 'access' provisions of [WIS. STAT. § 51.45(13)(e)] require[d] the County to file the specified records and reports with the [circuit] court prior to any final commitment proceedings" for an involuntary commitment due to alcoholism. *Michael J.K.*, 209 Wis. 2d at 502. We concluded that § 51.45(13)(e)—which provided in cases involving the prevention and control of alcoholism and drug dependence that "[c]ounsel, or the person [sought to be committed] … shall have access to all reports and records, psychiatric and otherwise, … and shall be given the names of all persons who may testify"— "plainly requires only that access be provided and imposes no affirmative duty of production." *Michael J.K.*, 209 Wis. 2d at 502-03. The County argues that the same reasoning applies to involuntary commitments under WIS. STAT. § 51.20.

The County's argument that our opinion here contradicts *Michael J.K.* was raised for the first time in its petition for review. The County's prior briefing clearly referenced WIS. STAT. § 51.20(10)(b) as requiring that the expert reports be filed 48 hours prior to the final hearing. In considering this argument, however, we decided to withdraw and modify our opinion to clarify that the statutes do not require the examiners' reports to *be filed* by WIS. STAT. § 51.20(10)(b)'s deadline, but instead require the reports to be *accessible to the subject individual's counsel* by § 51.20(10)(b)'s deadline.

In clarifying this issue, we reject the County's argument that our opinion contradicts *Michael J.K.* While *Michael J.K.* discusses the definition of "shall have access," it is silent as to whether a circuit court loses competency when the subject individual has not been given access to the statutorily mandated reports by the statutory deadline. *See Michael J.K.*, 209 Wis. 2d at 502-03. Here, Mark's counsel stated that he was not provided access to both examiners' reports as mandated by WIS. STAT. § 51.20(10)(b), and the County did not dispute that fact. For the reasons explained in our analysis, the lack of access to those reports violated Mark's due process rights and harmed him. *See supra* ¶¶22-26. Accordingly, we conclude that the failure to comply with § 51.20(10)(b) deprived the circuit court of competency.

prevents a subject from effectively preparing for his or her final hearing; interferes with the subject's right to effective assistance of counsel; may deprive the subject of essential evidence; and incentivizes the late filing of reports, particularly those that may otherwise be helpful to the subject. *See* § 51.20(5)(a). The expert report accessibility deadline is therefore not merely a technical requirement; instead, that deadline is central to the statutory scheme of ch. 51.

¶28 Consequently, the circuit court in this case lost competency to proceed with Mark's final hearing because Dr. Musunuru's report was not timely made accessible to Mark's counsel. We therefore reverse the orders for Mark's involuntary commitment and involuntary medication and treatment.

*By the Court.*—Orders reversed.

Recommended for publication in the official reports.